IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 16-cv-02993-LTB

JULIE MASTERSON

        Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

        Defendant.

_____

ORDER

_____

Plaintiff Julie Masterson appeals the final decision of the Acting Commissioner of Social Security ("SSA") denying her application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*. I have considered the parties' briefs (ECF Nos. 14–15, 17) and the administrative record (ECF No. 10) ("AR"). Oral argument would not materially assist me in determining this appeal.

Ms. Masterson argues the Administrative Law Judge ("ALJ") made numerous mistakes when she determined that Ms. Masterson was not disabled under the Social Security Act. Among other arguments, she argues the ALJ failed to follow the Appeals Council's instructions, erred when she evaluated her residual functional capacity ("RFC,") and erred by failing to consider all of Ms. Masterson's

impairments. I largely disagree with Ms. Masterson's arguments, and to the extent that the ALJ erred, any error was harmless. I accordingly AFFIRM SSA's decision.

## I. Background

Ms. Masterson filed her claim for disability and disability insurance benefits with SSA in September 2012, alleging disability beginning on July 31, 2003. AR 362–66. After SSA initially denied her claim, AR 193–200, Ms. Masterson requested a hearing, AR233–235. The hearing took place on June 13, 2014, before an ALJ. AR 146–92. On August 1, 2014, the ALJ denied Ms. Masterson's claim, concluding that she was not disabled within the meaning of the Social Security Act. AR 202–24. Ms. Masterson asked SSA's Appeals Council to review the ALJ's decision. AR 311–12. On December 24, 2015, the Appeals Council granted review and remanded the case for further proceedings. AR 225–29. The ALJ held a second hearing on April 19, 2016. AR 107–35. On June 16, 2016, the ALJ again denied Ms. Masterson's claim. AR 72–96. Ms. Masterson again asked the Appeals Council to review the ALJ's decision. AR 57–58. On October 16, 2016, the Appeals Council denied review, AR 41–46, making the ALJ's decision the final decision of SSA, *see Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On July 7, 2016, Ms. Masterson timely filed this appeal. (ECF No. 1.) I have jurisdiction pursuant to 42 U.S.C. § 405(g).

## II. Legal Standards

### A.    SSA's Five-Step Process for Determining Whether a Claimant Is "Disabled"

A claimant is disabled under Title II of the Social Security Act if she is unable to "engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). SSA has established a five–step sequential evaluation process for determining whether a claimant is disabled and thus entitled to benefits. 20 C.F.R. § 404.1520.

At step one, SSA asks whether the claimant is presently engaged in "substantial gainful activity." If she is, benefits are denied and the inquiry stops. § 404.1520(b). At step two, SSA asks whether the claimant has a "severe impairment"—that is, an impairment or combination of impairments that "significantly limits [her] physical or mental ability to do basic work activities." § 404.1520(c). If she does not, benefits are denied and the inquiry stops. If she does, SSA moves on to step three, where it determines whether the claimant's impairment(s) "meet or equal" one of the "listed impairments"—impairments so severe that SSA has determined that a claimant who has them is conclusively disabled without regard to the claimant's age, education, or work experience. § 404.1520(d). If not, SSA goes to step four. At step four, SSA determines the claimant's RFC—that is, what she is still able to do despite her impairments, and asks whether the claimant can do any of her "past relevant work" given that RFC. § 404.1520(e). If not, SSA goes to the fifth and final step, where it has the burden of showing that the claimant's RFC allows her to do other work in the national economy in view of her age, education, and work experience. § 404.1520(g). At this

step, SSA's "grid rules" may mandate a finding of disabled or not disabled without further analysis based on the claimant's age, education, and work experience. 20 C.F.R. Pt. 404, Subpt. P, App. 2. In contrast with step five, the claimant has "the burden of establishing a prima facie case of disability at steps one through four." *Doyal*, 331 F.3d at 760.

## B.     Standard for Reviewing SSA's Decision

My review is limited to determining whether SSA applied the correct legal standards and whether its decision is supported by substantial evidence in the record. *Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003). With regard to the law, reversal may be appropriate when SSA either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards. *See Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). With regard to the evidence, I must "determine whether the findings of fact . . . are based upon substantial evidence, and inferences reasonably drawn therefrom. If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970). "Substantial evidence is more than a scintilla, but less than a preponderance; it is such evidence that a reasonable mind might accept to support the conclusion." *Campbell v. Bowen*, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). I may not reweigh the evidence or substitute my judgment

4

for that of the ALJ. *Casias v. Secretary of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991).

### III. The ALJ's Decision

The ALJ followed the five-step analysis outlined above. At step one, the ALJ found that Ms. Masterson had not engaged in substantial gainful activity since her alleged onset date of July 31, 2003 and met the insured requirements of the Social Security Act through December 31, 2008. AR 78. At step two, the ALJ found Ms. Masterson had several severe impairments: obesity, bilateral knee osteoarthritis, mood disorder, bipolar disorder, posttraumatic stress disorder, and attention deficit hyperactivity disorder. *Id.*. At step three, the ALJ concluded that during the relevant period, Ms. Masterson's impairments did not meet or equal any of the "listed impairments" that mandate a conclusive finding of disability under the social security regulations. AR 80–82. At step four, the ALJ found that Ms. Masterson had the following RFC during the relevant period:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b). She could occasionally use foot controls and climb ramps and stairs. She could not climb ladders or scaffolds, kneel, crawl, or work at unprotected heights or with dangerous unprotected machinery. She was limited to simple, routine, and repetitive work with a maximum Specific Vocational Preparation (SVP) of 2. She could have occasional interaction with supervisors and coworkers but no interaction with the public as part of her job duties. She could tolerate few changes in the routine work setting.

AR 82. The ALJ determined that Ms. Masterson could not return to any past relevant work and proceeded to step five of the analysis. AR 87. At step five, the ALJ determined that considering her age, education, work experience, and RFC,

jobs existed in significant numbers that Ms. Masterson could perform, including a price marker, office helper, and hand packager. AR 88–89. The ALJ accordingly concluded that Ms. Masterson was not disabled under the Social Security Act during the relevant period. AR 89.

## IV.  Analysis

### A.  Remand Instructions

After Ms. Masterson's disability claim was initially denied by the ALJ in August 2014, she appealed to SSA's Appeals Council. AR 202–24, 311–12. The Appeals Council concluded the ALJ erred because her RFC determination failed to account for Ms. Masterson's difficulties with social functioning and remanded the case back to the ALJ. AR 227 ("Further consideration of the mental residual functional capacity, with a specific description of the social limitations, is warranted."). The Appeals Council directed the ALJ to "[g]ive further consideration to the Claimant's maximum residual functional capacity [RFC] and provide appropriate rationale with specific references to evidence of record in support of assessed limitations." *Id.* The Appeals Council also instructed the ALJ consider the impacts of the mental limitations on Ms. Masterson's ability to work:

> If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and state the incidence of such jobs in the national economy (20 CFR 404.1566). Further, before relying on the vocational expert evidence the ALJ will identify and resolve any conflicts between the

occupational evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics Occupations (Social Security Ruling 00-4p).

AR 228.

Ms. Masterson argues that the ALJ failed to follow the Appeals Council's remand instructions by: (1) failing to account for the physical limitations caused by her Meniere's disease (an inner ear disorder), hearing problems, neuropathy, and carpal tunnel syndrome; (2) failing to account for her mental impairments; (3) failing to adequately incorporate Ms. Masterson's mental limitations when questioning a vocational expert; and (4) failing to review the expanded record on appeal. Ms. Masterson's arguments on this point are belied by the ALJ's decision, which quite clearly followed the Appeals Council's remand instructions.

### 1.    Physical Limitations

Ms. Masterson argues the ALJ's RFC determination failed to incorporate the physical limitations caused by her hearing problems, neuropathy, Meniere's disease, and carpel tunnel syndrome, and she thus failed to follow the Appeals Council's instruction to "[g]ive further consideration to the Claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of assessed limitations." AR 227. Given that the Appeals Council only faulted the ALJ for failing to account for Ms. Masterson's *mental* limitations, it's quite a stretch to argue that Appeals Council's remand instructions addressed any of Ms. Masterson's *physical* limitations.

But even accepting Ms. Masterson's broad reading of the remand order, the ALJ's decision passes muster. The ALJ discussed Ms. Masterson's "mild hearing loss" and concluded it was not a severe impairment in light of testing that showed Ms. Masterson's "[s]peech discrimination is 100% bilaterally." AR 79. Similarly, the ALJ examined the evidence relevant to the neuropathy diagnosis, including Dr. Meredith's conclusion that there was "no clinical evidence on exam to suggest significant peripheral neuropathy" nor any decreased muscle strength, coordination, or reflexes. AR 78. In light of this evidence, the ALJ reasonably concluded that Ms. Masterson's neuropathy was non-severe. *Id.* As for the Meniere's disease, the ALJ addressed the symptoms it caused and again concluded they were non-severe, observing that Ms. Masterson's migraines and intermittent vertigo were "well managed with medical monitoring and prescription medication." AR 79.

While the ALJ failed to discuss Ms. Masterson's carpel tunnel syndrome, there are good reasons for this omission. Ms. Masterson had carpal tunnel surgeries in 1994 and 1995, almost a decade before she claimed to be disabled. AR 925. Then, in 2015, seven years after her last insured date, she was diagnosed with trigger fingers and had another surgery. AR 927–29. Since there is no evidence the carpel tunnel syndrome caused her any problems during the relevant period (2003–2008), the ALJ reasonably omitted it from her analysis. *See Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010) (observing that claimant must show disability began before last insured date).

## 2.   Mental Impairments

Ms. Masterson also argues that, contrary to the Appeals Council's instructions, the ALJ's RFC determination failed to account for her mental limitations. I can quickly dismiss this argument because the ALJ's decision describes the evidence related to Ms. Masterson's mental health in great detail. AR 81–82, 84–87. The ALJ concluded that Ms. Masterson's mood disorder, bipolar disorder, posttraumatic stress disorder, and attention deficient hyperactivity disorder were all severe impairments. AR 78. She also recognized that Ms. Masterson could not perform work that required her to interact with the public and could tolerate only occasional interaction with supervisors and coworkers and few changes in the the routine work setting. AR 82.

Ms. Masterson also argues that the ALJ improperly discounted the opinions of her mental health providers. While she couches this argument as another way that the ALJ failed to follow the Appeals Council's remand order, I fail to see how the remand order touches this issue. However, I address the stand-alone issue of whether the ALJ appropriately weighed the opinions below in the section addressing the ALJ's RFC determination.

## 3.   Vocational Expert Testimony

While Ms. Masterson's argument on this point is not entirely clear, she appears to argue that, contrary to the Appeals Council's instructions, the ALJ did not adequately question the vocational expert about whether, given her mental limitations, Ms. Masterson could perform the jobs the vocational expert identified

(office helper, price marker, and hand packager). However, the ALJ posed hypothetical questions to the vocational expert about someone with the same functional limitations as the ALJ ascribed to Ms. Masterson. AR 129–31. Based on that testimony, the ALJ properly concluded that there were jobs in significant numbers in the national economy that Ms. Masterson could perform. AR 88–89; *see Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). The ALJ also observed that the "vocational expert's testimony was based on the Dictionary of Occupational Titles as well as her education and experience in the field. Pursuant to SSR 00-4p, the undersigned finds that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." AR 88 (citation omitted). Ms. Masterson may disagree with the ALJ's assessment, but that alone is not a basis for reversal. *See Williamson*, 350 F.3d at 1098.

### 4. ALJ's Record Review

Ms. Masterson also argues that the ALJ failed to review the expanded record on appeal. Specifically, she argues the ALJ failed to consider Dr. Michael Curiel's records related to her neuropathy or a questionnaire from Judy Innes, a counselor. An examination of the ALJ's decision refutes Ms. Masterson's arguments. The ALJ's decision referenced Dr. Curiel's records, observing that "[t]reatment providers frequently observed that [Plaintiff] had . . . undiminished gait, motor skills,

strength, and coordination." AR 84 (citing Dr. Curiel's records and others). Even if the ALJ had not considered these records, the outcome would not change because the records were from 2013–14, years after Ms. Masterson's last insured date. AR 740–45. As for Ms. Innes's questionnaire, the ALJ specifically discussed how long Ms. Innes, a counselor, treated Ms. Masterson and described the weight she assigned to her opinions. AR 86. Accordingly, the ALJ considered the record evidence, as required by the Appeal's Council's remand instructions.

## B.    ALJ's Step Three Analysis

Ms. Masterson argues the ALJ failed to account for all her impairments at step three, when she evaluated whether they met or equaled a listing. The listings at 20 C.F.R. pt. 404, Subpt. P, App. 1 are examples of medical conditions which ordinarily preclude any gainful activity. Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. *Id.*

Ms. Masterson fails to identify which listing she believes she met. Rather, she generally argues that the ALJ failed to consider her "right bundle branch block" and Meniere's disease when evaluating whether she met any listing, citing Social Security Ruling 96-7p to support her argument. *See* Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7p, 1996 WL 374186 (SSA July 2, 1996). Social Security Ruling 96-79 was superceded by Social Security Ruling 16-3p in March 2016, before the ALJ issued her decision. *See id.*; Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3p, 2016 WL 1119029 (SSA Mar. 16, 2016). And neither

ruling saves Ms. Masterson's argument, as she cannot identify any listing she meets and fails to meet her burden to establish disability under the listings. *See Bernal v. Bowen*, 851 F.2d 297, 300 (10th Cir. 1988) (affirming SSA's determination that claimant did not meet or equal a listing where claimant "failed to provide sufficient evidence supporting his claims").

## C.     ALJ's Consideration of Evidence

Ms. Masterson also argues the ALJ ignored and misstated evidence in the record, leading to errors at several steps of the ALJ's analysis. In this argument, Ms. Masterson partially restates the arguments I already rejected, arguing the ALJ failed to consider her Meniere's disease and hearing loss.

She also argues the ALJ wrongly determined she had no restrictions in daily living, pointing to evidence that she did not go to the grocery store alone, paid someone to clean her house and provide lawn care, and struggled to do dishes. This argument essentially asks me to reweigh the evidence, which I cannot do. *Casias*, 933 F.2d at 800. Ms. Masterson testified that she could eat out, go grocery shopping with her husband, use the computer, and do dishes. AR 165–67. It was reasonable for the ALJ to conclude, based on this testimony, that Ms. Masterson was able to do the normal activities of daily living.

Similarly, the ALJ reasonably considered the evidence related to Ms. Masterson's intermittent migraines and concluded that they were not a severe impairment. AR 80, 82. Despite this conclusion, the ALJ accounted for the

occasional migraines by precluding employment that required working at unprotected heights or with dangerous unprotected machinery. AR 80, 82.

The ALJ also considered the evidence regarding Ms. Masterson's knee surgeries. She concluded that her bilateral knee osteoarthritis was a severe impairment, AR 78, limited her to light work with only occasional use of foot controls, and excluded jobs that required climbing ladders, kneeling, or crawling, AR 82. The ALJ also described the evidence related to Ms. Masterson's knee impairment in detail, accurately recounting that one physician noted that she could stand independently on either leg, that she had a normal gait, and that she was regularly exercising. AR 84.

As Ms. Masterson points out, the ALJ incorrectly determined that Ms. Masterson's sleep apnea was not diagnosed until after the insured time frame. In fact, it was first diagnosed in October 2007, before her last insured date of December 31, 2008. AR 78. The ALJ's factual error on this point was harmless because there was no evidence the disorder caused any impairment. AR 737–38 (records noting that Ms. Masterson had "reasonable sleep quality" despite impairment); *see Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004).

## D.    RFC

Ms. Masterson makes several arguments related to the ALJ's RFC determination. She argues the ALJ failed to consider all of her impairments, improperly discounted the opinions of her treating psychiatrist, Dr. Joseph Horn,

and her counselor, Ms. Innes, and improperly "cherry-picked" unfavorable information from Dr. Leach's report while ignoring favorable information.

RFC represents "the most [the claimant] can still do despite [her] limitations," 20 C.F.R. § 404.1545(a)(1), and must include "all of [the claimant's] medically determinable impairments," *id.* § 404.1545(a)(2). An RFC determination is an administrative assessment based on all the evidence of how the claimant's impairments and related symptoms affect his or her ability to perform work-related activities. *Young v. Barnhart*, 146 Fed. App'x 952, 955 (10th Cir. 2005) (unpublished). The final responsibility for determining the claimant's RFC rests with the Commissioner and is based upon all the evidence in the record. *Id.*; Titles II & XVI: Med. Source Opinions on Issues Reserved to the Comm'r, SSR 96-5P, 1996 WL 374184, at *7 (SSA July 2, 1996) (indicating that the RFC assessment by the ALJ must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence).

### 1. Consideration of all Impairments

Ms. Masterson argues that the ALJ failed to consider all of her impairments when she evaluated her RFC. I already rejected this argument in the context of Ms. Masterson's remand argument, and I similarly reject it as a stand-alone argument. The ALJ explicitly considered whether Ms. Masterson's impairments singly or in combination rendered her disabled. AR 80, 83.

## 2. Opinion Evidence

Ms. Masterson also argues the ALJ erred when she weighed the opinion evidence in the record. The amount of deference given to an opinion from a medical professional varies depending on its source. An ALJ should "[g]enerally . . . give more weight to opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). In deciding how much weight to give a treating source opinion, an ALJ must complete a two-step inquiry. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). An ALJ must first determine whether the opinion qualifies for "controlling weight." *Id.* An opinion from a treating source is entitled to controlling weight if it is both "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and consistent with other substantial evidence in the record. *See* Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions, SSR 96-2P, 1996 WL 374188, at *1 (SSA July 2, 1996). Even if not entitled to controlling weight, a treating source's opinion "may still be entitled to deference." *Id.* The amount of deference due depends on weighing several factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 404.1527(c), 416.927(c).

An ALJ uses these same factors to analyze opinions from "other" sources. §§ 404.1527(c), 416.927(c). "Other" sources also include non-medical sources, like teachers, counselors, and social workers. *See* Titles II and XVI: Considering Opinions and Other Evidence From Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, SSR 06-03p, 2006 WL 2263437 (SSA Aug. 9, 2006).

While opinions from other sources are evaluated using the same criteria as acceptable medical sources, they are not treated equally in all respects. Only evidence from "acceptable medical sources" can establish a medically determinable impairment, §§ 404.1513(a), 416.913(a), while "other" sources may provide evidence "to show the severity of [a claimant's] impairment(s) and how it affects [a claimant's] ability to work," § 404.1513(d). Only "acceptable medical sources" can be considered treating sources and given controlling weight. *See* 20 C.F.R. §§ 404.1502, 416.902.

### a. Dr. Horn's Opinions

Ms. Masterson argues the ALJ improperly evaluated the opinions of Dr. Joseph Horn, a psychiatrist who treated her for over a decade. Dr. Horn gave multiple opinions about Ms. Masterson's impairments, including one in 2013 and one in 2016. In both opinions, Dr. Horn opined that Ms. Masterson was unable to work a normal workweek because of her mental impairments, including anxiety disorder and a mood disorder. AR 655–57, 941, 944. In 2013, he opined she had

generally mild to moderate impairments in social interaction, except that he opined her ability to accept instructions and criticism from supervisors was markedly impaired. AR 943. He also opined she generally had marked impairments in understanding, memory, concentration, persistence, and adaptation. *Id.* In 2016, he assigned her greater limitations, indicating she had marked impairments in social functioning, and extreme difficulties concentration and persistence. AR 941.

The ALJ gave Dr. Horn's opinions "little" weight. AR 86. The ALJ discounted Dr. Horn's opinions in part because they were "not supported by his treatment notes." AR 86. This a valid reason for discounting his opinion. *See* 20 C.F.R. § 404.1527(c)(3) (opinions that are not well supported are entitled to less weight). The ALJ supported her decision to give Dr. Horn's opinions little weight with specific citations to the evidence. AR 84–85. Dr. Horn's notes contain little discussion of diagnostic observations and testing and indicate that Ms. Masterson's symptoms improved "despite some mention of noncompliance with psychotropic medications." AR 85. Accordingly, the ALJ did not err when she discounted Dr. Horn's opinions because they were inconsistent with his treatment notes.

But the ALJ did err when she also discounted Dr. Horn's opinions because they differed from one another and Dr. Horn did not explain the discrepancy. Unexplained inconsistencies in opinions can be a valid reason for rejecting them. *White v. Barnhart*, 287 F.3d 903, 906 (10th Cir. 2001). However*, White* does not stand for the proposition that any time a treatment provider's opinions are not entirely consistent, they can be completely rejected. In *White*, a treating provider

17

initially opined the claimant could carry 5–10 pounds, but less than a year later—and without a new examination or any changes in the results of imaging—he opined she could only carry 1–5 pounds. *Id.* at 906–07. In addition to this inconsistency, there were several other reasons for discounting the treating provider's opinion. He did not have a lengthy treatment history with the claimant. *Id.* at 906. In fact, the first time he examined the claimant was a year after she filed for disability, and he examined her so he could complete an assessment of her work-related abilities. *Id.* at 906. His physical examinations were cursory. *Id.* His opinion was inconsistent with that of consulting physicians whose examinations were more comprehensive than his. *Id.*

The circumstances here are unlike those presented in *White.* Unlike in *White*, Dr. Horn's opinions were several years apart, and they explicitly covered different time periods. *Compare* AR 941 (assessment covering 2004–2016) with AR 654 (assessment covering 2005–2013). Dr. Horn had consistently treated Ms. Masterson in the intervening years, and he treated her for well over a decade, beginning long before she filed her application for disability benefits in 2012. Moreover, while the ALJ said that Dr. Horn had not explained the differences in his opinions, he included a cover letter with his later (2016) opinion and explained that "[i]n her attempts to work, the stress associated with normal job requirements has led to further decompensation of her mood disorder." AR 940. Dr. Horn also explained that he has treated Ms. Masterson with medications, psychotherapy, and electroconvulsive treatment, with "little success." *Id.* These explanations may well

explain the relatively modest differences between his two opinions, but the ALJ failed to discuss them.

Nevertheless, this error was harmless. The ALJ's other well-supported reason for discounting the opinion, together with her evaluation of the other opinions in the record and the relevant medical evidence, demonstrate that "no reasonable administrative factfinder, following the correct analysis," could have resolved the issue in another way. *See Allen*, 357 F.3d at 45.

### b.    Ms. Innes's Opinions

Ms. Masterson argues the ALJ wrongly discounted the opinions of Ms. Innes, a licensed professional counselor who treated her. Ms. Innes opined that Ms. Masterson would "struggle with the symptoms of her disorder throughout her lifetime." AR 764. Ms. Innes also opined that Ms. Masterson likely could not work because of her "difficulty in thinking and memory," "inability to learn new tasks," and inability to "comprehend and retain new information." AR 764.

As a licenced professional counsel, Ms. Innes is considered an "other" source rather than an "acceptable medical source." The ALJ described Ms. Innes's opinion in detail and explained why she gave it little weight, including because it was inconsistent with the record evidence during the relevant time frame. By explaining the weight she gave to the opinion and providing legitimate reasons for discounting it, the ALJ adequately considered this opinion. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1164 (10th Cir. 2012) ("In the case of a nonacceptable medical source . . ., the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning'"

(quoting Titles II & XVI-II & XVI: Considering Opinions & Other Evidence from
Sources Who Are Not "Acceptable Med. Sources" in Disability Claims; Considering
Decisions on Disability by Other Governmental & Nongovernmenal Agencies, SSR
06-03P, 2006 WL 2329939, at *6 (SSA Aug. 9, 2006)).

### c. Dr. Leach's Opinion

Ms. Masterson also argues that the ALJ erred by only partially crediting the
report of Dr. Rob Leach, who conducted a neuropsychological evaluation of Ms.
Masterson in 2014. But Ms. Masterson fails to recognize that many of the functional
limitations the ALJ endorsed stemmed from Dr. Leach's report. Dr. Leach
concluded that Ms. Masterson had "gross impairment in her social and occupational
functioning." AR 677. Consistent with this impairment, ALJ limited Ms. Masterson
to simple, repetitive, routine work, with an SVP of 2, only occasional interaction
with coworkers and supervisors, and no interaction with the general public. AR 82.
But because Dr. Leach's examination was from 2014, long after Ms. Masterson's
last insured date of December 31, 2008, the ALJ did not fully credit it, particularly
since her mental health symptoms worsened in 2010. AR 85. Ms. Masterson offers
no reason why this was unreasonable, and I fail to see one. *See Wilson*, 602 F.3d at
1139 (claimant must show disability began before date last insured). In addition,
Dr. Leach observed that Ms. Masterson "performed within normal limited on nearly
all of the cognitive tests" and only had "mild deficits in visual learning and
memory." AR 676. Both these conclusions support the ALJ's finding that Ms.

Masterson was not disabled. Accordingly, the ALJ did not err in her evaluation of Dr. Leach's opinion.

### E.    Subjective Complaints

Ms. Masterson argues the ALJ failed to account for her subjective complaints of pain and fatigue and therefore erred at step five, when she determined that there were jobs in significant number in the national economy that Ms. Masterson could perform.

The ALJ reasonably concluded that the objective evidence did not support Ms. Masterson's subjective complaints of pain. While she recognized that Ms. Masterson experienced pain, she found the pain was not so severe that it prevented her from working. AR 83. The ALJ supported her determination with an exhaustive evaluation of the relevant evidence, AR 83–84, and I am not permitted to reweigh that evidence now, *Casias*, 933 F.2d at 800.

Ms. Masterson also argues the ALJ should have evaluated her for fatigue since she was diagnosed with sleep apnea. But there is no evidence in the record that fatigue caused even minor impairment. During the relevant period, she complained of fatigue once and then underwent a sleep study in October 2008. AR 737–38. She didn't seek additional treatment until 2010, after her last insured date. Given this scant evidence, the ALJ was not required to address fatigue in her decision. *Clifton*, 79 F.3d at 1009–10 (explaining that ALJ "is not required to discuss every piece of evidence").

**F.      Vocational Expert Testimony**

In her final argument, Ms. Masterson again takes issue with how the ALJ evaluated the vocational expert's testimony. This argument mirrors the same argument I rejected when I determined that the ALJ followed the Appeals Council's remand order. To the extent, if any, it differs from that argument, I reject it. The ALJ's conclusions were based on the vocational expert's testimony and did not depart from it. *See* AR 88, 128–35.

## V. Conclusion

For the above reasons, SSA's decision is AFFIRMED.


Dated: March ___12___, 2018 in Denver, Colorado.


                                                    BY THE COURT:


                                                    ___s/Lewis T. Babcock_____
                                                    LEWIS T. BABCOCK, JUDGE